# In the United States Court of Federal Claims

No. 21-778C
Filed Under Seal: March 9, 2021
Reissued: March 22, 2021*

**SEKRI, INC.,**

***Plaintiff,***

**v.**

**UNITED STATES,**

***Defendant.***

*Alan Grayson*, Windermere, FL, for the plaintiff.

*Rafique Anderson*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Allison Eck*, Defense Logistics Agency, of counsel, for the defendant.

**MEMORANDUM OPINION**

***HERTLING*, Judge**

The plaintiff, SEKRI, Inc. ("SEKRI"), has filed this pre-award bid protest alleging that the United States, acting through the Defense Logistics Agency ("DLA"), failed to designate in a solicitation that SEKRI is the mandatory source of supply of a military-equipment item known as Advanced Tactical Assault Panels ("ATAP"), which are components of protective ballistic vests.

The defendant has moved to dismiss the plaintiff's claim for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") or, in the alternative, for failure to state a claim under RCFC 12(b)(6), arguing that the plaintiff has waived its claim under the waiver rule established by *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007).

Because the plaintiff is not an actual or prospective bidder, the plaintiff lacks standing to bring a bid protest under 28 U.S.C. § 1491(b)(1). Although the defendant has not challenged the

* Pursuant to the protective order in this case, the Court initially filed this opinion under seal and gave the parties 14 days to propose redactions of confidential or proprietary information. (ECF 21.) The parties have agreed that the opinion does not contain any information that requires redaction. (ECF 24.) Accordingly, no redactions were made to this public version of the opinion.

plaintiff's standing, the Court must ensure it has jurisdiction over the case. Finding jurisdiction absent, the Court must dismiss for lack of subject-matter jurisdiction. RCFC 12(h)(3). Additionally, even if the plaintiff had standing, the Court would have to dismiss the plaintiff's claim under *Blue & Gold Fleet*, because the plaintiff failed to object to the solicitation upon discovering a patent error before the close of the solicitation.

## I. BACKGROUND[1]

The Javits–Wagner–O'Day Act ("JWOD Act"), codified at 41 U.S.C. §§ 8501-06, and its implementing regulations, 41 C.F.R. pt. 51 and 48 C.F.R. subpt. 8.7, established the AbilityOne Program. (ECF 1, ¶¶ 4-17.) The AbilityOne Program requires the government to procure certain items included on a procurement list from designated qualified nonprofit agencies that employ the blind or severely disabled. 41 U.S.C. § 8504(a). SEKRI is the designated, mandatory source from which the U.S. Army must procure ATAP. (ECF 1, ¶¶ 18-19.)

In July 2019, the DLA issued solicitation SPE1C1-19-R-002 ("solicitation"). (ECF 13-2, Decl. of Maria C. Aguayo ¶ 6.) The solicitation anticipated awards in two separate lots: Lot 1 sought to acquire a "Rifleman Set with Tactical Assault Panel" ("TAP"); Lot 2 originally sought the same with "Associated Components." (*Id.* ¶ 7.) The DLA awarded Lot 1 to Propper International, Inc. (*Id.* ¶ 11; ECF 1, ¶ 23.) Because SEKRI is not a mandatory source of TAP, it did not bid on either Lot 1 or Lot 2 of the solicitation.

On April 21, 2020, the DLA provided public notice of an amendment ("Amendment 6") to the solicitation. (ECF 1, ¶ 24.) Applying only to Lot 2, Amendment 6 changed the item to be acquired to a Rifleman Set with ATAP, in place of TAP. (*Id.*) Amendment 6 did not list any mandatory source of supply for ATAP. (*See id.*) The amendment became effective on June 3, 2020; it also established a July 20, 2020 proposal deadline. (ECF 13-1, App. at 74, 78.) Ultimately, on September 18, 2020, another amendment extended the closing date for proposals on Lot 2 to October 7, 2020. (*Id.* at 80-81.)

SEKRI learned of the change from TAP to ATAP shortly after the DLA issued Amendment 6. (ECF 14-1, Decl. of Leo Miller ¶ 6.) SEKRI thus became aware that the DLA was seeking ATAP through competition, rather than using SEKRI as the mandatory source of supply. (*Id.*) Because SEKRI is a mandatory source of ATAP, it did not submit a proposal to

---

[1] Because the Court grants the defendant's motion to dismiss, the facts as alleged in the complaint (ECF 1) are assumed to be true. This recitation of the facts therefore does not constitute findings of fact; rather, the Court provides a recitation of the facts as alleged by the plaintiff. For additional context, the Court refers to facts derived from exhibits submitted by the parties in support of their briefs regarding the defendant's motion to dismiss. These facts are included only to add context and to provide a more complete background. In deciding the jurisdictional issues, the Court considers evidence outside the pleadings, but in deciding the defendant's *Blue & Gold Fleet* waiver argument, the Court considers only the complaint and the exhibits explicitly noted in Part III.B, *infra*.

compete for the award. (*See* ECF 14 at 14 ("SEKRI is not a bidder; on the contrary, SEKRI is a required source of supply, and SEKRI maintains that there shouldn't be any 'bidders' or 'bidding' for ATAP at all.").) As SEKRI's executive director explained, "[u]nder the JWOD Act, . . . SEKRI is supposed to seek work by having requirements posted to the Procurement List established by the federal agency Ability One, not by bidding against other government contractors for such work." (ECF 14-1, Decl. of Leo Miller ¶ 5.)

SourceAmerica is the central nonprofit agency through which SEKRI generally must communicate regarding contracting activities under the AbilityOne Program. (ECF 1 at 10 n.6.) Between June 10, 2020 and June 25, 2020, SourceAmerica emailed the DLA regarding the solicitation, as amended by Amendment 6, on SEKRI's behalf.[2] (ECF 14 at 3; *see also* ECF 14-2.) SourceAmerica explained to the DLA via email that SEKRI is the nonprofit agency authorized to produce ATAP for the U.S. Army and inquired whether the DLA would be willing to acquire ATAP under the solicitation through SourceAmerica, and thus through SEKRI. (ECF 14-2.) The DLA's contracting officer replied that "[t]o best meet the Army's requirements, DLA is purchasing the [ATAP] in the full & open unrestricted solicitation . . . ." (*Id.*) Aside from this initial inquiry through email, SEKRI did not communicate further, either directly or indirectly through SourceAmerica, with the DLA. SEKRI made no complaint, either informal or formal, and lodged no protest regarding the solicitation, either with SourceAmerica, the DLA, or the Government Accountability Office ("GAO"). SEKRI did nothing until it filed this action before the Court in January 2021, more than three months after the solicitation closed.

On January 21, 2021, SEKRI filed this pre-award bid protest under the Tucker Act, 28 U.S.C. § 1491(b), alleging that the DLA had failed to designate SEKRI as the mandatory source of supply for ATAP and seeking "to enjoin the award or continued performance of any federal contract or contracts, or the modification of any federal contract or contracts, awarded to or performed by entities other than SEKRI, for the production (in whole or in part) of a military equipment item known as the [ATAP]." (ECF 1, ¶ 1.) The DLA has agreed not to make an award for Lot 2 before May 31, 2021, unless the Court issues a decision allowing a contract award to proceed. (ECF 11.)

The defendant has moved to dismiss for lack of subject-matter jurisdiction or, in the alternative, failure to state a claim upon which relief can be granted, under *Blue & Gold Fleet*. (ECF 13, *corrected at* ECF 18.) The defendant has not challenged the plaintiff's standing to maintain this action. The matter has been fully briefed, and upon the Court's request, the parties filed supplemental briefs addressing the issue of the plaintiff's standing. The Court heard oral argument on March 4, 2021.

---

[2] The plaintiff asserts in its brief (ECF 14 at 3) that email exchanges regarding Amendment 6 between SourceAmerica and the DLA occurred between June 10, 2020 and June 25, 2020. The only emails supplied by SEKRI are dated June 10, 2020; SEKRI has provided no emails from after that date.

## II. JURISDICTION AND STANDING

This court has jurisdiction over bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491(b), which confers on this court jurisdiction over actions "by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *Id.* § 1491(b)(1).

The defendant has moved to dismiss the complaint for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1) or, in the alternative pursuant to RCFC 12(b)(6), based on the waiver rule established in *Blue & Gold Fleet*, discussed *infra*, III.A.[3] To determine jurisdiction, the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence. *Id.* When a plaintiff's jurisdictional facts are challenged, only those factual allegations that the government does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). The court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts. *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)). The court may review evidence outside the pleadings. *Id.* If the court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss the claim.

As a threshold issue, a plaintiff must establish standing. Although the defendant does not dispute the plaintiff's standing (*see* ECF 16 at 2), the Court raises the issue *sua sponte*. The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

In the context of a bid protest, standing connotes a concept narrower than the typical inquiry to establish standing under Article III. Rather, to establish standing under § 1491(b), a protestor must be an "interested party." 28 U.S.C. § 1491(b)(1). The statutory term "interested party" has been held to have a particular meaning under § 1491(b). The Federal Circuit rejected

---

[3] The defendant argues that under *Bannum, Inc. v. United States*, 779 F.3d 1376, 1381 (Fed. Cir. 2015), the Court must resolve its motion to dismiss under *Blue & Gold Fleet* before even reaching the question of SEKRI's standing. *See also COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1381-82 (Fed. Cir. 2012) (reaching the *Blue & Gold Fleet* issue without addressing the issue of standing). The Court finds that the rationale of *Inserso Corp. v. United States*, 961 F.3d 1343 (Fed. Cir. 2020), undermines that aspect of *Bannum* and *COMINT*. In the wake of *Inserso*, as discussed below, the Court determines that dismissal under *Blue & Gold Fleet*'s waiver rule should be resolved under RCFC 12(b)(6). As a result, the issue of SEKRI's standing, and hence this Court's jurisdiction, must be addressed and resolved as a preliminary matter.

the dictionary meaning and the standing requirements of the Administrative Procedure Act ("APA"). *See Am. Fed'n of Gov't Employees, AFL-CIO v. United States* ("*AFGE*"), 258 F.3d 1294, 1302 (Fed. Cir. 2001) ("We . . . are not convinced that Congress, when using the term 'interested party' to define those who can bring suit under § 1491(b)(1), intended to confer standing on anyone who might have standing under the APA."). Because Congress used the same term in § 1491(b) as it did in the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551-59, the *AFGE* court found that "Congress intended the same standing requirements that apply to protests brought under the CICA to apply to actions brought under § 1491(b)(1)." *Id.* Based on the CICA definition of "interested party," the court held "that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Id.*

Following the "interested party" definition from *AFGE*, the Federal Circuit later established a two-prong test to establish standing under § 1491(b): the plaintiff must "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). Protestors must meet both prongs to establish standing. *See id.*; *see also CGI Fed. Inc. v. United States*, 779 F.3d 1346, 1348 (Fed. Cir. 2015). SEKRI fails the first prong of this test.

SEKRI concedes that it is not an actual bidder for the DLA's solicitation. (*See* ECF 14 at 14.) SEKRI's executive director explained that it does not seek work "by bidding against other government contractors for such work." (ECF 14-1, Decl. of Leo Miller ¶ 5.) Instead, as a mandatory source, it relies on obtaining work through the AbilityOne Program. (*See id.*) The only issue therefore is whether SEKRI is a "prospective bidder."

Both parties cite to *Weeks Marine, Inc. v. United States*, 575 F.3d 1352 (Fed. Cir. 2009), to establish the plaintiff's standing. In *Weeks Marine*, a non-bidder established standing because it had demonstrated a non-trivial competitive injury in a pre-award bid protest. *Id.* at 1363. Both parties argue that because SEKRI can demonstrate a non-trivial competitive injury, the result in *Weeks Marine* would appear to give the plaintiff standing. The parties' approach misinterprets the analysis in *Weeks Marine*. The Federal Circuit did not deviate in that case from its two-prong standing test and specifically noted that § 1491(b)(1) "imposes more stringent standing requirements than Article III." *Id.* at 1359 (citing *AFGE*, 258 F.3d 1294).

The court in *Weeks Marine* found that the protestor was a prospective bidder because the protestor intended to bid and was able to perform the work contemplated by the contracts. *Weeks Marine*, 575 F.3d at 1359-60. The government did not dispute the protestor's intention to bid or capability to perform. *Id.* Accordingly, the court moved on to the second prong. Its holding is significant not because it gave non-bidders with a non-trivial competitive injury standing but, instead, because it set the standard for the second prong in a pre-award bid protest. Instead of requiring that a protestor demonstrate a "substantial chance" of obtaining the contract but for the alleged error in the procurement process, as used for post-award bid protests, the court held that, in pre-award bid protests, the "*prospective bidder or offeror* must establish 'a non-trivial competitive injury which can be redressed by judicial relief' . . . ." *Id.* at 1363 (internal quotation uncited) (emphasis added). In so holding, the Federal Circuit did not eliminate the first prong of its standing test under § 1491(b)(1).

SEKRI has not established that it is a prospective bidder. Although SEKRI claimed to be a prospective bidder at oral argument, it admits in its opposition brief that it "isn't even competing for award under [Amendment 6]." (ECF 14 at 17.) The plaintiff's "opportunity to qualify as a prospective bidder ends when the solicitation period ends . . . ." *CGI Federal*, 779 F.3d at 1350 (emphasis omitted). SEKRI has a timing issue; it cannot now claim to be a prospective bidder on the DLA's solicitation because the solicitation period ended on October 7, 2020.

Under *CGI Federal*, a plaintiff qualifies as a prospective bidder if it diligently pursued its protest rights, such as bringing a bid protest prior to the close of bidding. *CGI Federal*, 779 F.3d at 1349-50. The standing analysis here becomes blurred with the *Blue & Gold Fleet* waiver rule, which requires a protestor with the opportunity to object to a patent error to do so prior to the close of the bidding process. *See Blue & Gold Fleet*, 492 F.3d at 1313. Indeed, the Federal Circuit, in declining to reach the standing issue after finding waiver under *Blue & Gold Fleet*, noted that its case law "itself has taken into account, in certain circumstances, whether a party has timely presented and diligently pressed its protest" to determine whether a protestor is an "interested party." *Bannum*, 779 F.3d at 1381 (citing *CGI Federal*, 779 F.3d 1346).

*CGI Federal* was a pre-award bid protest brought by a protestor who was not an actual bidder. *CGI Federal*, 779 F.3d at 1347-48. The protestor instead argued that it was a prospective bidder. *Id.* at 1348. Before bidding closed, the protestor filed a timely pre-award protest at the GAO. *Id.* Although the bidding period closed while the GAO protest was pending, the court held that the protestor had established its status as a prospective bidder by filing the protest prior to the close of bidding. *Id.* at 1348, 1351.

SEKRI could likewise qualify as a prospective bidder if only it had "diligently pursue[d] its protest rights" prior to the proposal deadline. *Id.* at 1349. SEKRI learned of Amendment 6 shortly after the DLA issued it, and SEKRI knew that the DLA was seeking ATAP through competition, rather than using SEKRI as a mandatory source of supply. (ECF 14-1, Decl. of Leo Miller ¶ 6.) On June 10, 2020 (before the proposal deadline), SourceAmerica emailed the DLA's contracting officer stating that SEKRI is the nonprofit agency authorized to produce ATAP for the U.S. Army and inquiring whether the DLA would be willing to move forward with SourceAmerica. (ECF 14-2.) The contracting officer replied that the DLA was purchasing the ATAP through a full and open competition. (*Id.*) SourceAmerica relayed that information to SEKRI on the same day and encouraged SEKRI "to respond to the commercial Solicitation before it closes on July 20, 2020, while [SourceAmerica] continue[s] to look at other options."[4] (*Id.*) Disregarding SourceAmerica's advice, SEKRI did nothing.

SEKRI lacks standing for the same reason it would lose on the merits under *Blue & Gold Fleet*. It did not do anything in response to the solicitation; it neither submitted a bid nor objected to the DLA or any other entity prior to the proposal deadline, despite knowing that the

[4] The deadline was ultimately extended to October 7, 2020 on September 18, 2020. (ECF 13-1, App. at 81.)

DLA was procuring ATAP through competition. SEKRI did not diligently pursue its protest rights through the SourceAmerica emails. SourceAmerica merely inquired on SEKRI's behalf whether the DLA would be willing to move forward with SourceAmerica, and the DLA replied that it was proceeding through competition. SEKRI then did not formally protest the solicitation until January 21, 2021, when it filed the present action in this court, 106 days after the close of the solicitation. SEKRI also failed to protest or complain informally to the DLA in a manner that might have salvaged its ability to claim status as a prospective bidder. SEKRI lost its opportunity to qualify as a prospective bidder when the proposal deadline ended, without protest or complaint of any kind by SEKRI, on October 7, 2020.

As a mandatory source of supply for ATAP, SEKRI can establish a non-trivial competitive injury, but SEKRI never makes it to the second prong of the Federal Circuit's test for standing under § 1491(b). SEKRI argues that the Federal Circuit has addressed standing in a mandatory-source protest under the JWOD Act. (ECF 17 at 5 (citing *PDS Consultants, Inc. v. United States*, 907 F.3d 1345 (Fed. Cir. 2018).) *PDS Consultants* does not, however, help SEKRI to establish standing. In that case, the Federal Circuit again used the CICA definition of "interested party" to establish the protestor's standing. *PDS Consultants*, 907 F.3d at 1356 (citing 31 U.S.C. § 3551(2)(A) and *AFGE*, 258 F.3d at 1302). The protestor in *PDS Consultants* was preemptively challenging whether the agency could issue new contracts in the future, not challenging either an existing contract or a closed solicitation. *PDS Consultants, Inc. v. United States*, 132 Fed. Cl. 117, 125 (2017), *aff'd*, 907 F.3d 1345. In other words, there had not yet been a solicitation period on the future contracts being challenged. There would have been no *CGI Federal* prospective-bidder analysis required in those specific circumstances; indeed, the Federal Circuit did not cite *CGI Federal*. *See PDS Consultants*, 907 F.3d at 1356. The Federal Circuit held that the protestor had standing because "it is an actual or prospective service-disabled veteran-owned small business bidder on the . . . procurements whose direct economic interest would be affected by the contract award (or failure thereof)." *Id.* *PDS Consultants* would help SEKRI if this case were about a potential future procurement of ATAP by the DLA and the DLA had informed SEKRI that such a future procurement would again not include SEKRI as a mandatory source. The case does nothing to establish standing for SEKRI to challenge the now-closed DLA procurement at issue.

Although SEKRI has an economic interest as a mandatory source of supply, other protestors that have been found to lack standing as non-actual or non-prospective bidders likely have also had economic interests. In *AFGE*, for example, the protestors were federal employees who allegedly had their employment at risk. *AFGE*, 258 F.3d at 1297. They alleged that if the services at issue had been contracted to a contractor, rather than performed by agency personnel, then the employees would be displaced. *Id.* In rejecting the dictionary meaning of "interested party" and the APA standing requirements, the court adopted a meaning of "interested party" in § 1491(b) more stringent than merely a "'person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action.'" *Id.* at 1302 (quoting 5 U.S.C. § 702). Rather, the court adopted the CICA definition in full. The ordinary sense of standing does not apply; a protestor must be an actual or prospective bidder to establish standing under § 1491(b). Because the federal-employee protestors in *AFGE* were not bidders or prospective bidders, the court held that they did not have standing. *Id.*

Despite not being an actual or prospective bidder, SEKRI may have legal resource beyond this court's jurisdiction. The Tenth Circuit, for example, recognized the Federal Circuit's interpretation of "interested party" in § 1491(b). *See City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 910 (10th Cir. 2004). Because the Federal Circuit limited jurisdiction under § 1491(b) to only actual or prospective bidders, the Tenth Circuit held that the district court retained jurisdiction "to hear cases challenging the government's contract procurement process so long as the case is brought by someone other than the actual or potential bidder." *Id.* at 911. The district court's jurisdiction derives from 28 U.S.C. § 1331 and the waiver of sovereign immunity in the APA. *Id.*; *see also Validata Chem. Servs. v. U.S. Dep't of Energy*, 169 F. Supp. 3d 69 (D.D.C. 2016) (Moss, J.) (criticizing the *AFGE* definition of "interested party" while acknowledging APA jurisdiction in district court for claims by non-interested parties).

SEKRI notes that the GAO, which applies the same standard from the CICA under its bid-protest jurisdiction, has exercised jurisdiction over cases involving mandatory sources under the JWOD Act. (ECF 17 at 5 (citing *Training, Rehab. & Dev. Inst., Inc.*, B-418480, 2020 CPD ¶ 171, 2020 WL 2489778 (Comp. Gen. May 13, 2020); *Goodwill Indus. of the Valleys*, B-415137, 2017 CPD ¶ 369, 2017 WL 6032987 (Comp. Gen. Nov. 29, 2017).) Although not bound by GAO decisions, the Court may consider these decisions persuasive authority on the application of the CICA's definition of "interested party." These cases do not appear to conflict with the Federal Circuit's approach, which is, of course, binding authority.

In *Training, Rehab. & Development Inst.*, the GAO did not discuss the term "interested party" or need to grapple with the issues raised in *CGI Federal* because the mandatory-source protestor "timely filed a protest challenging the terms of th[e] solicitation before the . . . deadline for submission of quotations." 2020 WL 2489778, at *2. Here, in contrast, SEKRI did not file a protest before the deadline for the submission of proposals.

In *Goodwill Industries*, the facts are closer but still distinguishable. The agency was negotiating a new lease for a building with an incumbent lessor, VVP, LLC ("VVP"). 2017 WL 6032987, *2. Originally, the agency had contracted with Goodwill separately for custodial services, for which Goodwill was the mandatory, designated source under the AbilityOne program. *Id.* The new lease was to be a full-service lease, including the custodial services. *Id.* VVP requested a proposal from Goodwill for the services, and Goodwill provided a proposal but reminded VVP that it was the mandatory source for the services. *Id.* After the agency awarded VVP the new full-service lease, the agency notified Goodwill that it would no longer contract directly with Goodwill for the custodial services. *Id.* When Goodwill sought to confirm that the agency was requiring VVP to procure the custodial services from Goodwill pursuant to the AbilityOne regulations, the agency responded that it had no authority to direct VVP to do so. *Id.* at *2-3. Goodwill filed its protest within ten days of that response. *Id.* at *4.

The agency argued that Goodwill was not an "interested party" because Goodwill, unlike VVP, had not submitted a proposal to satisfy the space requirement. *Id.* at *5 n.10. The GAO rejected this argument because Goodwill had no interest in providing space and "did, in fact, submit a proposal to perform the custodial services at issue in response to a request from VVP . . . ." *Id.* Here, SEKRI did not submit any proposal, and although it learned that the DLA

was proceeding with competition for ATAP in June 2020, it did not complain formally or informally or protest until January 2021.

The GAO cases that SEKRI cites neither add clarity to the relevant standing issue before the Court nor conflict with the Federal Circuit's approach. They are insufficient to overcome the clear mandate of the Federal Circuit's precedents.

None of this is to say that the Court of Federal Claims lacks jurisdiction to hear claims brought by mandatory-source suppliers of goods and services under the JWOD Act. Indeed, SEKRI would have had standing to maintain this action if it had taken the necessary steps to complain or protest the DLA's planned procurement of ATAP through an open competition prior to the closing date for the submission of proposals. It is that specific failure to have met the Federal Circuit's test for being a prospective bidder that undermines SEKRI's standing, and not the nature of its status as an alleged mandatory source under the JWOD Act.

Absent some exception to the Federal Circuit's approach, the Court is bound by *AFGE*'s definition of "interested party" and subsequent cases interpreting the standing requirement under § 1491(b). The Court is unaware of any such exception and the parties have cited none. The Court notes that it makes sense intuitively that a mandatory source of supply in SEKRI's situation would have standing to challenge the solicitation even without being an actual or prospective bidder, because SEKRI is challenging the mere fact that there was an open solicitation for bids at all. The Federal Circuit precedents have never addressed the precise situation confronting the Court. The test established by those precedents, however, is clear and is not limited to the facts of the cases that were before the Court of Appeals as it devised the test. Until the Federal Circuit clarifies the issue or creates a relevant exception to its test for standing under § 1491(b), it is not for this Court to carve out its own exception in the face of binding precedent.

Because SEKRI has not established that it is an actual or prospective bidder, it cannot meet the first prong of standing under § 1491(b). SEKRI does not have standing to bring a bid protest in this court, and the complaint must be dismissed under RCFC 12(b)(1) and 12(h)(3).

## III. *BLUE & GOLD FLEET*

Given the novel situation presented by the issue of bid-protest standing for a mandatory-source protestor, the Court also considers the substance of the defendant's motion to dismiss. Even if the plaintiff had standing, the Court finds that the plaintiff's complaint must be dismissed under *Blue & Gold Fleet*.

The defendant argues that SEKRI waived its claim under *Blue & Gold Fleet* and its progeny. Because SEKRI filed this bid protest challenging the solicitation 106 days after the deadline for proposals under that solicitation (October 7, 2020 – January 21, 2021), the defendant argues that SEKRI's claim is untimely under *Blue & Gold Fleet*. SEKRI argues that *Blue & Gold Fleet* does not apply.

There is uncertainty whether the *Blue & Gold Fleet* waiver rule is jurisdictional. The defendant has moved to dismiss either for lack of subject-matter jurisdiction under RCFC 12(b)(1) or, in the alternative, for failure to state a claim under RCFC 12(b)(6). The Court finds that the *Blue & Gold Fleet* waiver rule is not jurisdictional and thereby more appropriately addressed under RCFC 12(b)(6).

### A. *Blue & Gold Fleet* Waiver Rule

In *Blue & Gold Fleet*, the Federal Circuit held "that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." 492 F.3d at 1313. This "waiver rule" furthers the statutory mandate in 28 U.S.C. § 1491(b)(3), which provides that "'the courts shall give due regard to the interests of national defense and national security and *the need for expeditious resolution of the action*.'" *Id.* (quoting 28 U.S.C. § 1491(b)(3)) (emphasis in original).

The Federal Circuit reasoned that the same rationale underlying its patent-ambiguity doctrine applies when a party recognizes a patent error but does not object until after the close of the bidding process. *Id.* at 1314. Specifically, the court found that "[a] waiver rule . . . prevents contractors from taking advantage of the government and other bidders, and avoids costly after-the-fact litigation." *Id.* The court explained the consequences of a contrary holding:

> In the absence of a waiver rule, a contractor with knowledge of a solicitation defect could choose to stay silent when submitting its first proposal. If its first proposal loses to another bidder, the contractor could then come forward with the defect to restart the bidding process, perhaps with increased knowledge of its competitors.

*Id.*

The Federal Circuit also found support in the fact that the GAO has adopted a similar rule in its bid protest regulations, which provide that "'[p]rotests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals.'" *Id.* (quoting 4 C.F.R. § 21.2(a)(1)) (modification in original).

The *Blue & Gold Fleet* waiver rule has been reenforced and expanded in subsequent cases. For example, in *COMINT* the Federal Circuit held that "the reasoning of *Blue & Gold* applies to all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so." 700 F.3d at 1382. More recently, the Federal Circuit in *Inserso* cited the broader standard from *COMINT* and held that the contractor in that case had forfeited its right to seek relief. 961 F.3d at 1349-52.

Courts have held that when *Blue & Gold Fleet*'s waiver rule applies, a court must dismiss the action; it has no discretion to allow the plaintiff to maintain the action. *See, e.g., Contract*

*Servs., Inc. v. United States*, 104 Fed. Cl. 261, 273 (2012); *Unisys Corp. v. United States*, 89 Fed. Cl. 126, 139 (2009); *see also Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1317 (Fed. Cir. 2016) (Reyna, J., concurring) ("Dismissal is mandatory, not discretionary.").

**B. Standard of Review**

Courts have not been consistent as to whether motions to dismiss under the *Blue & Gold Fleet* waiver rule should be subject to RCFC 12(b)(1) or RCFC 12(b)(6). *Compare Sys. Dynamics Int'l, Inc. v. United States*, 130 Fed. Cl. 499, 511 (2017) (finding that the waiver rule is a jurisdictional requirement subject to a RCFC 12(b)(1) analysis), *with Unisys Corp.*, 89 Fed. Cl. at 137 (dismissing under RCFC 12(b)(6) a claim barred by the waiver rule). *See also DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1343 (Fed. Cir. 2012) (discussing whether the government's *Blue & Gold Fleet* jurisdictional argument was substantially justified and holding that it was).

Informed by the recent Federal Circuit precedent in *Inserso*, the Court finds that the *Blue & Gold Fleet* waiver rule is not jurisdictional and thereby more appropriately addressed under RCFC 12(b)(6).

The Supreme Court has held that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" *Arbaugh*, 546 U.S. at 514 (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). In *Blue & Gold Fleet*, the Federal Circuit did not establish the waiver rule as a limit on jurisdiction; indeed, it noted that "the jurisdictional grant of 28 U.S.C. § 1491(b) contains no time limit requiring a solicitation to be challenged before the close of bidding . . . ." 492 F.3d at 1315. *Blue & Gold Fleet* rooted its waiver rule in § 1491(b)(3), which requires courts to "give due regard to . . . the need for expeditious resolution of the action." *See id.* (quoting 28 U.S.C. § 1491(b)(3)).

Although § 1491(b) gives this court jurisdiction over bid protests challenging the terms of solicitations, *Blue & Gold Fleet* limits when a court can grant relief. *See Inserso*, 961 F.3d at 1352 (holding, in applying the waiver rule, that the contractor had "forfeited its right to . . . relief"). Against a challenge by Judge Reyna in dissent arguing that the *Blue & Gold Fleet* waiver rule had not survived the Supreme Court's decision in *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 137 S. Ct. 954 (2017) (rejecting the application of laches to bar statutorily timely patent claims), the majority in *Inserso* firmly grounded *Blue & Gold Fleet*'s waiver rule in the statutory text of 28 U.S.C. § 1491(b)(3). 969 F.3d at 1349 n.1.

Section 1491(b)(3) provides in full: "*In exercising jurisdiction under this subsection*, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3) (emphasis added). In other words, once the plaintiff has established jurisdiction, § 1491(b)(3) limits the relief that can be granted, requiring the court to "give due regard to . . . the need for expeditious resolution of the action." *See id.* The court, for example, cannot grant relief to a protestor who challenges the terms of a solicitation years after the proposal deadline, even if the protestor's complaint is filed before the statute of limitations. *See* 28 U.S.C. § 2501 (establishing the Tucker Act's six-year statute of limitations). Otherwise, the court would run counter to § 1491(b)(3)'s mandate.

The waiver rule applies in full force when, as here, the protestor seeks injunctive relief.[5] For example, in *Inserso*, the protestor "asked the court to provide all bidders in the small-business competition access to the unequally disclosed information and to reopen the competition to accept revised proposals." *Inserso*, 961 F.3d at 1352. The Federal Circuit held that the policy behind the waiver rule was served because the protestor was "seeking the relief it could have gotten from [the agency] earlier, before [the agency] had already expended considerable time and effort evaluating the bidders' proposals." *Id.* Because it had not objected to the solicitation before the submission of final proposals, the protestor forfeited its right to relief. *Id.*

As noted in footnote 3, *supra*, the defendant has cited two cases that reached the *Blue & Gold Fleet* issue without addressing the issue of standing, but those cases predate *Inserso*. (ECF 16 at 2 (citing *Bannum, Inc.*, 779 F.3d at 1381 and *COMINT*, 700 F.3d at 1381-82).) The court in *Inserso* describes the waiver rule as a limit on the protestor's right to relief, not a limit on jurisdiction. *See Inserso*, 961 F.3d at 1352.

Because the Court determines that the *Blue & Gold Fleet* waiver rule is not jurisdictional, the defendant's motion does not put jurisdiction in question. Accordingly, the Court will consider the defendant's motion to dismiss under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

Dismissal for failure to state a claim upon which relief can be granted "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*,

---

[5] Given the waiver rule's statutory underpinning (28 U.S.C. § 1491(b)(3)) and the six-year statute of limitations of 28 U.S.C. § 2501, the waiver rule may support a different outcome if the protestor seeks bid preparation costs. *See Inserso*, 961 F.3d at 1352-56 (Reyna, J., dissenting) (raising objections to the *Blue & Gold Fleet* waiver rule). Because protesters are primarily interested in securing the contract award, the cases have focused on claims for injunctive relief. The distinction between the type of relief sought in the application of *Blue & Gold Fleet* appears to remain unexplored territory. One possible course through which the Federal Circuit will resolve the various strands of precedent, including its labeling of the waiver rule in *Inserso*, 961 F.3d at 1352, as a limitation on relief, and wrestle with the substance of Judge Reyna's dissent would be to hold that waiver under *Blue & Gold Fleet* ultimately does not compel dismissal, under either RCFC 12(b)(1) or (b)(6). Instead, the Federal Circuit could determine that the waiver rule forecloses a court's ability to grant injunctive relief. That approach, which seems most consistent with the language of § 1491(b)(3) on which the waiver rule is based, would leave open the possibility that plaintiffs could still obtain bid preparation costs, even in the face of a *Blue & Gold Fleet* waiver. In any event, the Federal Circuit has not yet even started down this path, and it would be irrelevant here given that SEKRI has not requested bid preparation costs because it did not prepare or submit a bid.

241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In considering a motion to dismiss under RCFC 12(b)(6), courts are generally limited to the consideration of the allegations in the plaintiff's complaint. *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015). RCFC 12(b)(6) thus differs from RCFC 12(b)(1), under which courts may review evidence outside the pleadings when considering if jurisdiction exists. *See Shoshone Indian Tribe of Wind River Rsrv.*, 672 F.3d at 1030 (quoting *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1584, *cert. denied*, 512 U.S. 1235 (1994).).

The law, at least prior to *Inserso*, was unclear as to whether a motion to dismiss under *Blue & Gold Fleet* went to the court's jurisdiction, and this case appears to be the first to address the question since *Inserso*. As a result, the defendant brought its motion under RCFC 12(b)(1), only citing to RCFC 12(b)(6) as an alternative basis for dismissal. In opposition to the defendant's motion under RCFC 12(b)(1), the plaintiff submitted exhibits to establish the Court's jurisdiction. The plaintiff attached to its opposition brief a declaration by SEKRI's executive director (ECF 14-1) and an exhibit containing emails between SourceAmerica and the DLA and between SourceAmerica and SEKRI (ECF 14-2).

Because of the lack of clarity regarding the basis for dismissal under the *Blue & Gold Fleet* waiver rule, in the interest of fairness and consistent with the narrow exception set out in *Dimare Fresh*, the plaintiff should have every opportunity to support its defense against dismissal under RCFC 12(b)(6). For the purposes of this motion, the Court will also therefore consider the plaintiff's additional materials to the extent that they support the plaintiff's claim, as if the materials are integral to the plaintiff's complaint. *See Dimare Fresh*, 808 F.3d at 1306 (holding that courts may consider documents that are "'incorporated by reference or integral'" to the plaintiff's claim) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

The defendant attached to its motion to dismiss the solicitation documents (ECF 13-1) and a declaration of DLA's contracting officer (ECF 13-2). Because the plaintiff refers to the solicitation documents in its complaint, the Court also considers those solicitation documents but does not consider the contracting officer's declaration.

### C. Application of the Waiver Rule

Under the *Blue & Gold Fleet* waiver rule, the plaintiff waives its claim if it (1) "ha[d] the opportunity to object to the terms of a government solicitation containing a patent error," and (2) "fail[ed] to do so before the close of the bidding process." *Blue & Gold Fleet*, 492 F.3d at 1313.

**1. SEKRI had the opportunity to object to the DLA's amendment containing an alleged patent error.**

A patent error is "'an obvious omission, inconsistency or discrepancy of significance'" that "could have been 'discovered by reasonable and customary care.'" *Per Aarsleff A/S*, 829 F.3d at 1312-13 (quoting *E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004) and *Analytical & Rsch. Tech., Inc. v. United States*, 39 Fed. Cl. 34, 46 (1997)).

On April 21, 2020, the DLA provided public notice of Amendment 6, which modified the solicitation from one seeking to acquire TAP to one seeking to acquire ATAP. (ECF 1, ¶ 24.) Amendment 6 did not list ATAP as having a mandatory source of supply. (*See id.*) SEKRI argues that this omission is error but that it is not patent. Accepting that it is error for the purposes of the motion at hand, it must be a patent error because the omission of the mandatory source constitutes an obvious discrepancy of significance.[6] This obviousness is evidenced by SEKRI's own admission that it found out that the DLA was seeking ATAP through competition shortly after the issuance of Amendment 6 and asked SourceAmerica to inquire about it. (*See* ECF 14 at 3.)

Related to its opportunity to object, SEKRI argues that *Blue & Gold Fleet* applies only to bidders and prospective bidders, and because SEKRI is neither a bidder nor a prospective bidder but the mandatory source for ATAP, the waiver rule should not apply here.[7] (*Id.* at 14-16.) For support, SEKRI relies on this court's decision in *Red River Commc'ns, Inc. v. United States*, 109 Fed. Cl. 497 (2013). In *Red River*, this court found that the waiver rule did not apply to a non-offeror who was excluded from submitting a proposal by the solicitation's terms. *Id.* at 511. In that case, the solicitation at issue was not an open-source solicitation; instead, it "was issued as a task order to an umbrella contract known as 'NETCENTS–1.'" *Id.* at 500. It was advertised only through the NETCENTS–1 website. *Id.* at 501. The protestor did not hold a NETCENTS–1 contract. *See id.* at 510. Although the protestor in *Red River* learned of the solicitation prior to the deadline for submission of proposals, the court found that *Blue & Gold Fleet* did not apply. *Id.* at 511.

In *Red River*, the court distinguished other cases finding that *Blue & Gold Fleet*'s waiver rule does apply to non-offerors. *Id.* at 507-10; *see e.g.*, *Shamrock Foods Co. v. United States*, 92 Fed. Cl. 339 (2010); *Infrastructure Def. Techs., LLC v. United States* ("*IDT*"), 81 Fed. Cl. 375 (2008). Notably, unlike the solicitations in *Shamrock Foods* and *IDT*, the solicitation in *Red River* was not publicly advertised. *Red River*, 109 Fed. Cl. at 510. The court found it "axiomatic

---

[6] SEKRI also argues that *Blue & Gold Fleet* does not apply because there is no patent ambiguity in Amendment 6. (ECF 14 at 10-12.) *Blue & Gold Fleet*, however, applies to cases of patent error, not patent ambiguity. That case merely used the reasoning of the patent-ambiguity doctrine to support the waiver rule. 492 F.3d at 1313-14.

[7] SEKRI's argument that *Blue & Gold Fleet* does not apply to it because it is neither an actual nor prospective bidder undercuts the argument it makes to support its standing.

that if a contractor has no knowledge of the terms of a solicitation, it should not be charged with the duty to bring any patent errors in that solicitation to the attention of the agency prior to the close of bidding." *Id.*

The protestor in *Red River* acquired the requisite knowledge of the solicitation's terms to bring a timely challenge, but the court reasoned that waiver was not appropriate. *Id.* at 510-11. The court found that the policy undergirding *Blue & Gold Fleet*'s waiver rule—"the need for expeditious resolution of the action" under 28 U.S.C. § 1491(b)(3)—supported an exception:

> It will not serve that need [for expeditious resolution of the action] if a protest filed by a non-offering contractor becomes ensnared in an ancillary inquiry targeted to determining what the contractor knew about the solicitation and when it knew it, or whether the contractor chose the most effective means to bring the matter to the agency's attention.

*Red River*, 109 Fed. Cl. at 510. In other words, "the potential for time-consuming collateral inquiries is too great to ignore" when a contractor is "excluded from submitting a proposal by a solicitation's terms and did not submit a proposal." *Id.* at 511. The protestor therefore was not required to satisfy the *Blue & Gold Fleet* waiver rule. *Id.*

The situation in *Red River* was different from the situation facing the plaintiff here. Most significantly, the DLA provided public notice, "evidently through SAM.gov," of Amendment 6 on April 21, 2020. (ECF 1, ¶ 24.) SEKRI does not allege that the amendment to the solicitation was secret or circulated to a limited audience. It does not allege that it failed to find out about the amendment in a timely manner such that it could not have brought a protest before the agency or to this court while the solicitation was open. Rather, SEKRI explains that it "does not consult such sources in order to participate in procurements, because it is a mandatory source of supply, so it doesn't need to." (ECF 14-1, Decl. of Leo Miller ¶ 5.)

Although they go beyond the face of the complaint, the materials presented by the plaintiff reveal that SEKRI found out about Amendment 6 shortly after the DLA issued it, thereby learning of the DLA's effort to acquire ATAP through competition. (ECF 14-1, Decl. of Leo Miller ¶ 5.) SEKRI was not excluded from submitting a proposal by the solicitation's terms. As the alleged mandatory source of supply for the ATAP, SEKRI had an obligation to object to the solicitation in a timely manner to preserve its ability to pursue a challenge in this court. SEKRI is unable to explain why the rationale supporting the *Blue & Gold Fleet*'s waiver rule, as most recently explicated by the Federal Circuit in *Inserso*, is inapplicable to its protest. Indeed, the opposite is true. The policy behind *Blue & Gold Fleet*'s waiver rule is served because SEKRI is "seeking the relief it could have gotten from [the DLA] earlier, before [the DLA] had already expended considerable time and effort evaluating the bidders' proposals." *See Inserso*, 961 F.3d at 1352.

Although SEKRI's complaint is devoid of allegations that it protested the solicitation to the DLA, SEKRI presents the Court with documentation that it did make some effort to pursue its claim to being the mandatory source for ATAP during the pendency of the solicitation. On

June 10, 2020, SourceAmerica emailed the DLA's contracting officer regarding Amendment 6. (*See* ECF 14-2.) At most the emails were an inquiry, not a complaint and certainly not a protest. SourceAmerica explained that SEKRI is the nonprofit agency authorized to produce ATAP for the U.S. Army and inquired whether the "DLA would be willing to move forward with SourceAmerica" for the item. (*Id.*) The DLA replied that it was proceeding under the terms of the amendment with a full and open competition. (*Id.*) SourceAmerica did not express dissatisfaction or objection to the DLA in response; instead, it relayed that information on the same day to SEKRI and encouraged SEKRI to respond to the solicitation before the proposal deadline. (*Id.*) On June 10, the proposal deadline was July 20, 2020, but it was ultimately extended to October 7, 2020. (*See* ECF 14-2; *see also* ECF 13-1, App. at 78.) Despite the ongoing pendency of the solicitation, SEKRI took no further action, either through administrative or judicial avenues, to challenge the solicitation and did not submit an offer.

SEKRI claims it had good cause to delay a protest because (1) it acted in accordance with governing law through SourceAmerica; (2) it did not monitor beta.sam.gov and did not receive a copy of Amendment 6 from the DLA; and (3) it is the DLA's responsibility to comply with its obligation to procure from mandatory sources. (ECF 14 at 18-19.)

Despite neither monitoring beta.sam.gov nor receiving a copy of Amendment 6 from the DLA, SEKRI knew about it. (ECF 14-1, Decl. of Leo Miller ¶ 5.) SEKRI not only knew about the amendment, but it pursued the issue through SourceAmerica. Following the June 10 email exchange among SourceAmerica, the DLA, and SEKRI, SourceAmerica encouraged SEKRI "to respond to the commercial Solicitation before it closes on July 20, 2020, while we continue to look at other options." (ECF 14-2.)

Given SEKRI's economic interest in the procurement, it could not sit on its rights and wait for the proposal deadline to pass, especially with the knowledge in June that the DLA was not going to change course. SEKRI did not have good cause to delay a protest it would have had until October 2020 to bring.

**2. SEKRI failed to object to the DLA's solicitation before the close of the bidding process.**

To avoid waiver, a party must object before the close of the bidding process, which SEKRI argues means before an award is made. *See Blue & Gold Fleet*, 492 F.3d at 1313. In this case, although the solicitation is closed, no award has yet been made.

The Federal Circuit has held that the waiver rule applies when a party does not challenge the solicitation prior to the close of bidding. *Per Aarsleff A/S*, 829 F.3d at 1312-13; *see also MLS-Multinational Logistic Servs., Ltd v. United States*, 143 Fed. Cl. 341 (2019) ("the Federal Circuit has repeatedly determined that waiver can apply to pre-award protests as well as to post-award protests."). SEKRI brought the present pre-award bid protest on January 21, 2021, and the DLA has agreed not to make an award before May 31, 2021. (ECF 1 & 11.) The close of bidding, however, was on October 7, 2020. (ECF 13-1, App. at 81.) SEKRI did not bring a bid protest before October 7, 2020.

The only question remaining is whether the SourceAmerica emails from June 10, 2020 constitute an objection to the procurement's terms sufficient to avoid waiver under *Blue & Gold Fleet*.

In 2015, the Federal Circuit held in *Bannum* that "mere notice of dissatisfaction or objection is insufficient to preserve [the protestor's] defective-solicitation challenge." 779 F.3d at 1380. *Bannum* reasoned that clarity is important for expeditious resolution of protest claims:

> Requiring that the prescribed formal routes for protest be followed (to avoid waiver) reduces uncertainty about whether the issue is joined and must be resolved, and thereby helps prevent both the wasted and duplicative expenses (of all bidders and the government) and the delayed implementation of the contract that would likely follow from laxer standards of timely presentation of solicitation challenges.

*Id.*

The Federal Circuit suggested that a formal, agency-level protest or a pre-award protest filed with the GAO would likely preserve a protestor's challenge to a solicitation. *Id.* (citing *COMINT*, 700 F.3d at 1382). In *Bannum*, because the contractor did not file a formal protest, it waived its challenge, despite providing the contracting officer notice of its dissatisfaction with the solicitation's requirements. *Id.* at 1381.

Although there are some cases from this court applying a looser standard, these cases predate the Federal Circuit's decision in *Bannum*. *See, e.g.*, *DGR Assocs., Inc. v. United States*, 94 Fed. Cl. 189, 202 (2010) (interpreting *Blue & Gold Fleet* to require only that "a party must have done something prior to the closing date to protest the solicitation error");[8] *Bannum, Inc. v. United States*, 115 Fed. Cl. 257, 274 (2014) (finding that a letter to the contracting officer objecting to the solicitation requirements was sufficient to preserve the contractor's challenge). The discussion by the Federal Circuit in *Bannum* provides the controlling and decisive guidance in the case now before the Court.

---

[8] SEKRI cites to the related Federal Circuit decision, *DGR Assocs.*, 690 F.3d 1335 (2012), to argue that the Federal Circuit's standard for what constitutes a sufficient objection is only that a party have "done something." (ECF 14 at 21.) Not only does that decision predate the Federal Circuit's decision in *Bannum*, which added some clarity to what is required to object, but the applicability of *DGR* is limited because it discusses *Blue & Gold Fleet* in the context of an application for fees under the Equal Access to Justice Act and addresses only whether the government's jurisdictional argument was substantially justified. *See DGR Assocs.*, 690 F.3d at 1343-44.

SEKRI claims that it was following the procedures set forth by the JWOD Act and its regulations when it raised the issue through SourceAmerica. (ECF 14 at 3.) The defendant disagrees, pointing to the regulation governing disputes:

> Disputes between a nonprofit agency and a contracting activity arising out of matters covered by parts 51–5 [Contracting Requirements] and 51–6 [Procurement Procedures] of this chapter shall be resolved, where possible, by the contracting activity and the nonprofit agency, with assistance from the appropriate central nonprofit agency. Disputes which cannot be resolved by these parties shall be referred to the Committee for resolution.

41 C.F.R. § 51–6.15. Although SEKRI argues that this provision only applies to the administration of contracts, it appears to apply to disputes generally. *Cf.* § 51–6.9 (providing the procedure for correspondence and inquiries during contracting activities). The regulation demonstrates that SEKRI had an avenue to complain directly to the DLA rather than only going through SourceAmerica to resolve its objection. Even if the regulation did not afford SEKRI a route to complain directly to the DLA, nothing prevented SEKRI from protesting at the GAO or this court when it discovered the alleged error in the solicitation.

SEKRI did not object to the DLA through an agency-level protest before the solicitation closed. It did not protest at the GAO before the solicitation closed. It did not file an action in this court before the solicitation closed. It did not do anything further prior to the proposal deadline. As the defendant notes, SEKRI did not protest the solicitation until it filed the present action in this court on January 21, 2021, 106 days after the close of the solicitation—more than enough time to protest. *Cf. Inserso*, 961 F.3d at 1352 (noting that the protestor there "had months to notify [the agency] of th[e] defect" in the solicitation and then an additional two months before award); *COMINT*, 700 F.3d at 1383 (noting that the protestor "had two and a half months between the issuance of [the challenged amendment to the solicitation] and the award of the contract in which to file its protest. That was more than an adequate opportunity to object.").

*Bannum* explicitly holds that a protestor must do more than provide notice of dissatisfaction or objection to preserve its challenge. 779 F.3d at 1380. SEKRI did not do so.

### 3. SEKRI waived its challenge to the DLA's amendment.

SEKRI argues that the *Blue & Gold Fleet* waiver rule does not apply when a challenge rests on a statute that is protective of the protestor. (ECF 14 at 22-25.) Because the JWOD Act is a protective statute, SEKRI argues that there should be an exception carved to the waiver rule for its protest. The plaintiff argues that it is the government's duty to comply with the statutory and regulatory mandates of the AbilityOne program. (*See id.* at 3-4 (citing 41 U.S.C. §§ 8501-06; 41 C.F.R. pt. 51; 48 C.F.R. subpt. 8.7).) This obligation imposed on the government should excuse any application of the waiver rule to SEKRI.

The government is always obligated to follow the laws and regulations governing the procurement process, but that does not remove the bidder's responsibility to object to the

government's patent errors in a timely manner if the bidder had the opportunity to do so, as required by *Blue & Gold Fleet*. SEKRI does not cite to any case creating a protective-statute exception to the *Blue & Gold Fleet* waiver rule (*see* ECF 14 at 22-25), and the Court does not find that the basis of the plaintiff's claim on the merits can overcome the statutory mandate in § 1491(b)(3), under which the *Blue & Gold Fleet* waiver rule derives its authority.

Because SEKRI had the opportunity to object to an alleged patent error in Amendment 6 but did not do so before the close of bidding, SEKRI waived its challenge.

## IV. CONCLUSION

The plaintiff is not an actual or prospective bidder and thereby not an "interested party" under 28 U.S.C. § 1491(b). Accordingly, the Court must dismiss *sua sponte* the plaintiff's complaint for lack of subject-matter jurisdiction under RCFC 12(b)(1) and 12(h)(3).

Even if the plaintiff had standing, it waived its claim under the *Blue & Gold Fleet* waiver rule by failing to protest the solicitation upon discovering a patent error before the closing of the proposal deadline. The Court grants the defendant's motion to dismiss under RCFC 12(b)(6).

The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**